WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Thomas MacWright

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
John K. Cunningham
Richard S. Kebrdle (*pro hac vice* pending)

*Attorneys for Ricardo Costa Villela*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 15 |
| | ) | |
| **ARALCO S.A. - Indústria e Comércio, *et. al.,*[1]** | ) | Case No. 15-10419 (___) |
| | ) | Joint Administration Requested |
| **Debtors in Foreign Proceedings.** | ) | |
| | ) | |

## DECLARATION OF RICARDO COSTA VILLELA IN
## SUPPORT OF (I) FOREIGN REPRESENTATIVE'S PETITION FOR
## RECOGNITION OF BRAZILIAN BANKRUPTCY PROCEEDINGS
## AND MOTION FOR ORDER GRANTING RELATED RELIEF
## PURSUANT TO 11 U.S.C. §§ 105(a), 1507(a), 1509(b), 1515, 1517, 1520 AND 1521

---

[1]      The debtors in these chapter 15 cases, along with the last four digits of each debtor's foreign tax or registration identification number, are:  Aralco S.A. - Indústria e Comércio (01-80); Agral S.A. Agrícola Aracanguá (01-65);  Destilaria Generalco S.A. (01-73); Alcoazul S.A. - Açúcar e Álcool (01-70);  Figueira Indústria e Comércio S.A. (01-25); Aralco Finance S.A.(6520); Aracanguá Sociedade de Participação Ltda. (01-00); Agrogel - Agropecuária General Ltda. (01-82) ; and Agroazul - Agrícola Alcoazul Ltda. (01-24).

I, Ricardo Costa Villela, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    I submit this declaration (the "Petitioner Declaration") in support of the *Foreign Representative's Petition for Recognition of Brazilian Bankruptcy Proceedings and Motion for an Order Granting Related Relief pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1509(b), 1515, 1517, 1520 and 1521* (together with the Forms of Voluntary Petition filed contemporaneously therewith, the "Petition") [ECF Nos. 1 and 3],[2] which seeks entry of an order (i) granting the Petition in these cases and recognizing the Brazilian Bankruptcy Proceedings as foreign main proceedings pursuant to section 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"),[3] (ii) recognizing the Petitioner as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Brazilian Bankruptcy Proceedings, (iii) giving full force and effect in the United States to the Brazilian Reorganization Plan and the Brazilian Confirmation Order, (iv) authorizing and directing (a) Deutsche Bank Trust Company Americas (the "Indenture Trustee"), in its capacity as the indenture trustee under that certain indenture dated as of May 7, 2013 (the "Indenture") relating to the issuance of the 10.125% senior notes due 2020 (the "Notes") in the aggregate principal amount of US$250 million issued by Aralco Finance S.A. ("Aralco Finance") and guaranteed by the certain other Debtors; (b) the Depository Trust Company (the "DTC"), in its capacity as the record holder of the Notes; and (c) and any other parties necessary to effectuate the relief requested herein, to take any and all actions necessary to give effect to the terms of the Brazilian

---

[2]    Except as otherwise indicated, capitalized terms used herein carry the meanings ascribed to them in the Petition.

[3]    Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

Reorganization Plan, (v) permanently enjoining all persons from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtors or their property, and (vi) granting such other and further relief as the Court deems just and proper.

2.      I am a member of the board of directors of Aralco Finance and the head of human resources for Aralco S.A. and am the authorized foreign representative (the "Foreign Representative") of each of above-captioned debtors (the "Aralco Group" or the "Debtors") in connection with their ongoing judicial reorganization proceedings (the "Brazilian Bankruptcy Proceedings") in the Federative Republic of Brazil ("Brazil") pursuant to Federal Law No. 11.101 of February 9, 2005 (the "Brazilian Bankruptcy Law") before the Second Civil Court of Araçatuba (the "Brazilian Bankruptcy Court").  Pursuant to the Resolution of Appointment (defined below) dated February 13, 2015 I am fully authorized to act on behalf of the Debtors as each of the Debtors' foreign representative and commence these chapter 15 cases.

3.      I am familiar with Debtors' history, day-to-day operations, assets, financial condition, business affairs, books and records, and restructuring efforts.

4.      Therefore, unless otherwise indicated, all facts set forth in this Declaration are based upon:  (a) my personal knowledge; (b) my review of relevant documents; (c) information supplied to me by the Debtors' officers, directors, and employees, or professionals retained by the Debtors, including, with respect to matters of U.S. bankruptcy law, information provided to me by the Debtor's U.S. counsel, White & Case LLP; or (d) my opinion based on my experience with and knowledge of the Debtors' operations and financial condition.

5.      I am an individual over the age of 18.  If I am called to testify, I will do so competently and based on the facts set forth herein.

6.      On February 28, 2014, the Debtors filed voluntary bankruptcy petitions in the Brazilian Bankruptcy Court, thus commencing the Brazilian Bankruptcy Proceedings.

7.      On May 9, 2014, the Brazilian Bankruptcy Court issued a decision approving the commencement of the joint reorganization proceeding of the Debtors (the "Commencement Order"), a copy of which from the electronic judicial files of the Brazilian Bankruptcy Court is attached hereto as Exhibit "A," along with a certified translation of the Commencement Order from Portuguese to English attached hereto as Exhibit "B."

8.      On July 14, 2014, the Debtors presented the Brazilian Bankruptcy Court with the Brazilian Reorganization Plan, which was amended during the first court supervised meeting of creditors on December 3, 2014.  Such meeting was suspended until December 8, 2014, when both the Debtors and the creditors gathered again to provide for minor changes to, and vote on, the Brazilian Reorganization Plan.  A copy of the Brazilian Reorganization Plan from the electronic judicial files of the Brazilian Bankruptcy Court is attached hereto as Exhibit "C," along with a certified translation from Portuguese to English attached hereto as Exhibit "D."

9.      The Brazilian Reorganization Plan was then overwhelmingly approved by the vast majority of creditors, in what is considered the most successful vote on a reorganization plan in the Brazilian sugar and ethanol sector.  On January 21, 2015, the Brazilian Bankruptcy Court entered an order approving the Brazilian Reorganization Plan (the "Brazilian Confirmation Order").  A copy of the Brazilian Confirmation Order from the electronic judicial files of the Brazilian Bankruptcy Court is attached hereto as Exhibit "E," along with a certified translation from Portuguese to English attached hereto as Exhibit "F."

10.     The approved Brazilian Reorganization Plan contemplates the filing of these chapter 15 cases within 30 days after the publication of the Brazilian Confirmation Order

(i.e., by February 22, 2015).  See Brazilian Reorganization Plan at § 1.2.12 ("Chapter 15:

Bankruptcy auxiliary process to be filed, by Aralco Group, before the Bankruptcy Court for the

Southern District of New York, according to Chapter 15 of Title 11 of United States Code,

intended to grant effectiveness for the plan in the territory of the United States."); see also

Brazilian Reorganization Plan at § 14.5.4 ("Aralco Group shall file Chapter 15 within thirty (30)

days after Plan Judicial Homologation, aiming to grant effects to the Plan in US territory,

bounding Bondholders there resident or based.").

       11.     Therefore, in order to fulfill this requirement of the Brazilian

Reorganization Plan, on February 13, 2015, by power of attorney (the "Power of Attorney")

signed by authorized representatives of each of the Debtors, the Debtors duly appointed me as

their foreign representative.  A copy of the executed Power of Attorney is attached hereto as

Exhibit "G," along with a certified translation from Portuguese to English attached hereto as

Exhibit "H."

## Background

### A.    The Debtors' Businesses

       12.     The Debtors are leading low-cost producers of sugar and ethanol,

operating four mills (Aralco, Alcoazul, Generalco and Figueira) located within close proximity

to one another in the State of São Paulo, Brazil.  Each of the Debtors is incorporated under the

laws of Brazil, except Aralco Finance, which is incorporated under the laws of Luxembourg.

Each of the Debtors maintains its principal place of business in the city of Santo Antônio do

Aracanguá, State of São Paulo, Brazil.  The Debtors do not assert that they have a domicile in the

United States.

13.    As of the date hereof, substantially all of the Debtors' assets are located in Brazil.  As of the date hereof, the Debtors' sole property in the United States is a joint interest in an undrawn retainer with White & Case LLP, the Debtors' U.S. counsel in connection with the filing of these chapter 15 cases. That retainer is held in an interest-bearing client trust account with Citibank in the Borough of Manhattan in the City of New York, New York (the "Client Trust Account").  Pursuant to the terms of an engagement letter between the Debtors and White & Case LLP dated October 13, 2014, Figueira Indústria e Comércio S.A. (on behalf of each of the Debtors) deposited USD$49,943.20 in White & Case LLP's general trust account with Citibank which is also located in the Borough of Manhattan in the City of New York, New York on February 2, 2015.  Such funds were then transferred to the Client Trust Account and remain in the Client Trust Account as of the date hereof.  White & Case LLP is only permitted to apply the funds in the Client Trust Account to outstanding invoiced amounts with the prior written consent of the Debtors.  The Debtors are the beneficiaries of all interest that accrues on the funds in the Client Trust Account.

### B.    Summary of Debtors' Debt Structure

14.    Under the Indenture, Aralco Finance privately placed the 10.125% Notes due in 2020 in the aggregate principal amount of US$250,000,000 in an offering that was exempt from registration under SEC Rule 144A and Regulation S.    Aralco S.A. and four of its operating subsidiaries – Destilaria Generalco S.A., Figueira Indústria e Comércio S.A., Alcoazul S.A. – Açúcar e Álcool and Agral S.A. – Agrícola Aracangúa – have guaranteed the Notes.   The Notes are general, unsecured obligations of Aralco Finance and each of the guarantors and are pari passu with such Debtors' other unsecured obligations.

15.     Deutsche Bank Trust Company Americas acts as the Indenture Trustee, Registrar, Transfer Agent and New York Paying Agent for the Notes, whereas Deutsche Bank Luxembourg S.A. acts as the Irish Paying Agent for the Notes.

16.     The Debtors have total debt of approximately R$1.67 billion.  Included in this amount are approximately R$160 million in tax liabilities and R$400 million in other fiscal liabilities, which, as a matter of law, are not subject to treatment in the Brazilian Bankruptcy Proceeding or the Brazilian Reorganization Plan.  The Debtors have labor debts of approximately R$11 million, secured debts of approximately R$580 million and unsecured debts of approximately R$520 million, including the US$250 million of Notes.[4]

**C.     Events Precipitating Commencement of the Brazilian Bankruptcy Proceedings**

17.     Despite the Debtors' prominent position in Brazil's sugar and ethanol market, adverse conditions beyond their control have recently impaired their financial health. The Debtors' business has suffered from the low productivity of recent harvests due to a persistent drought in the São Paulo region and the lack of sufficient investments.  The Debtors have also been impacted by pricing instabilities, which have been caused primarily by the Brazilian government's actions to control inflation in Brazil by artificially depressing fuel prices. Finally, the Debtors were severely affected by the Brazilian currency rate devaluation, which increased its relative indebtedness substantially.

---

[4]     The Debtors' indebtedness is comprised of amounts in Brazilian Reais (R$) and US dollars.  As of February 17, 2015, R$100 is equal to approximately USD$35.34.

### D.    The Brazilian Bankruptcy Proceedings

18.     In light of the above factors, on February 28, 2014, the Debtors filed voluntary bankruptcy petitions in the Brazilian Bankruptcy Court, thus commencing the Brazilian Bankruptcy Proceedings and on May 9, 2014, the Brazilian Bankruptcy Court entered the Commencement Order.

19.     In the course of the judicial reorganization, several of the Noteholders formed an ad hoc group (the "Ad Hoc Group") and retained separate counsel in Brazil.  The members of the Ad Hoc Group (who are primarily based in the U.S.) also obtained authorization from the Brazilian Bankruptcy Court for certain of its members to attend and vote at the court-supervised creditors' meetings, independently of the Indenture Trustee.  Pursuant to the Indenture, the Indenture Trustee was not permitted to vote on the Brazilian Reorganization Plan on behalf of Noteholders.  Upon a joint motion of the Indenture Trustee and the Debtors, the Brazilian Bankruptcy Court entered an order providing that the individual Noteholders could cast their vote in respect of the Brazilian Reorganization Plan in their own names.

### 1.    The Brazilian Restructuring Plan Is Overwhelmingly Approved

20.     On July 14, 2014, the Debtors presented the Brazilian Bankruptcy Court with the Brazilian Reorganization Plan, which was amended during the first court supervised meeting of creditors on December 3, 2014.  Such meeting was suspended until December 8, 2014, when both the Debtors and the creditors gathered again to provide for minor changes to, and vote on, the Brazilian Reorganization Plan.  The Debtors' creditors actively participated in negotiations of the terms of the Brazilian Reorganization Plan, and the Debtors and their advisors provided extensive financial analysis and disclosure to aid the process.

21.     The Brazilian Reorganization Plan and the voting procedures applied

uniformly to all of the Debtors' creditors wherever they resided, including all of the holders of

the Notes, who were provided with the opportunity to participate in the creditors' meeting and

the voting process in accordance with Brazilian Bankruptcy Law.  For example, members of the Ad

Hoc Group based in the U.S. appeared at the creditors' meetings and participated fully and fairly in the

approval and voting process, as contemplated by Brazilian Bankruptcy Law.

22.     The Brazilian Reorganization Plan was then overwhelmingly approved by

the vast majority of creditors, in what is considered the most successful vote on a reorganization

plan in the Brazilian sugar and ethanol sector.

### 2.     The Key Terms of the Brazilian Reorganization Plan

23.     In general, the Brazilian Reorganization Plan provides for: (i) the

corporate and operational restructuring of the Debtors; (ii) a process to market and approve the

sale of certain assets to raise funds to promote the growth of the Debtors and the payment of

creditors; (iii) new payment terms for the Debtors' debts; and (iv) the possible conversion of

unsecured debts into equity, with the consequential dilution of the holdings of current

shareholders.

24.     The Debtors' corporate and operational restructuring is premised upon for

the creation of New Aralco, which will be formed as the Debtors' holding company, and

responsible for conducting the Debtors' operations.  New Aralco will be governed by a board of

directors whose members will be appointed by the shareholders with the approval of the Debtors'

creditors, pursuant to the terms set forth in the Brazilian Reorganization Plan.  The Brazilian

Reorganization Plan also provides for the establishment of an "Advisory Group" of seven (7)

members to make strategic decisions concerning the Debtors.  In general, four (4) of the

members of the Advisory Group will be appointed by unsecured creditors (who comprise the

vast majority of the Debtors' debt), one (1) member shall be appointed by secured creditors, one

(1) member will be appointed by a syndicated group of banks if it acquires certain of the

Debtors' assets as contemplated under plan, and one (1) member will be appointed by

shareholders.

25.     At its core, the Brazilian Restructuring Plan provides for the payment, at

face amount, of the claims of all classes of creditors and permits the Debtors' creditors to

participate in the management and operations of the Debtors.  For instance, the Brazilian

Reorganization Plan provides for each holder of the Notes to receive, in full satisfaction of its

claims, its pro rata share of (i) new secured notes in the principal amount equal to 40% of the

existing Notes and (ii) new secured notes (which will contain a convertible feature allowing for

the holders to convert them into for equity in the Debtors' new holding company, New Aralco

(discussed below)) in the principal amount equal to 60% of the existing Notes.   The new notes

will be guaranteed by all of the Debtors and New Aralco, denominated in U.S. dollars and

governed by U.S. law, and are expected to be governed by transfer restrictions like those in the

Notes.

26.     The second tranche of new secured notes to be issued in connection with

the Brazilian Reorganization Plan (in respect of 60% of the face value of the existing Notes) to

the Noteholders will have a convertible feature, which will allow their holders to convert such

portion of the face value of their debt into equity of New Aralco pursuant to the terms set forth in

the Brazilian Reorganization Plan.  The Debtors' unsecured creditors other than the Noteholders

may also receive a convertible instrument in respect of 60% of the face value of their debt.

Collectively, these convertible instruments to be issued to the Noteholders and the other

unsecured creditors give the right to their holders to convert their debt into up to a total of 74%

of the equity in New Aralco.  To the extent such conversion rights are exercised, the Debtors'

existing shareholders will be diluted proportionately.  In the event that the Noteholders and other

unsecured creditors do not exercise such conversion rights, they will receive cash payments over

time, as set forth in the Brazilian Reorganization Plan.  The Brazilian Reorganization Plan also

provides that unsecured creditors will benefit from accelerated payments on part of their

reorganized debts to the extent the Debtors generate excess cash in the 2015 and 2016 crop

years.

### Requests for Recognition and Related Relief

27.    In connection with the filing of these chapter 15 cases, I have submitted

the Petition and the Application.  In addition to the facts set forth above, the factual bases for the

relief requested is set forth below.

**A.    The Motion**

28.    With this Petitioner Declaration, I have filed the Motion seeking entry of

an order that

(a)    grants the Petition in these cases and recognizes the Brazilian Bankruptcy
Proceedings as foreign main proceedings pursuant to section 1517 of the
Bankruptcy Code,[5]

(b)    recognizes the Petitioner as the "foreign representative," as defined in
section 101(24) of the Bankruptcy Code, in respect of the Brazilian
Bankruptcy Proceedings,

---

[5]    In the event that the Court declines to recognize the Brazilian Bankruptcy Proceeding in respect of Aralco
Finance as a foreign main proceeding, the Petitioner requests that this court enter an order that recognizes such
Brazilian Bankruptcy Proceeding as a foreign nonmain proceeding.

(c)     gives full force and effect in the United States to the Brazilian Reorganization Plan and the Brazilian Confirmation Order (each as defined below),

(d)     authorizes and directs (i) the Indenture Trustee, in its capacity as indenture trustee under the Indenture; (ii) the DTC, in its capacity as the record holder of the Notes; and (iii) and any other parties necessary to effectuate the relief requested herein, to take any and all actions necessary to give effect to the terms of the Brazilian Reorganization Plan,

(e)     permanently enjoins all persons from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtors or their property, and

(f)     grants such other and further relief as the Court deems just and proper.

29.     As detailed more fully in the Motion, I believe that there is a compelling case for recognition of the Brazilian Bankruptcy Proceedings as foreign main proceedings.

30.     In addition, I believe that the additional assistance requested from the Court is appropriate.  The relief requested in the Motion will give clear direction and authority under U.S. law to the Indenture Trustee and the DTC to carry out the requirements of the Brazilian Reorganization Plan in accordance with Brazilian Bankruptcy Law and the Brazilian Confirmation Order.

31.     Moreover, a permanent injunction will ensure the fair and efficient administration of the Brazilian Bankruptcy Proceedings, which aim to protect all parties in interest and to require that all the Debtor's creditors be bound by the terms of the Brazilian Reorganization Plan, as approved by the Brazilian Confirmation Order.  Without this relief, certain creditors may seek judgments in the United States against the Debtors or their property, seeking to obtain more than the pro rata treatment to which they are entitled under the Brazilian Reorganization Plan.  If such creditors can effectively evade the terms of the Brazilian Reorganization Plan and the Brazilian Confirmation Order by commencing actions in the United

States, the Debtors would be left to defend against these suits, regardless of their merit. This could deplete the resources of the Debtors' restructured business and prejudice its reorganized value. For these reasons, an injunction would support implementation of the Brazilian Confirmation Order and the Brazilian Reorganization Plan and would protect the interests of all of the Debtors' creditors in having claims against the Debtors and their estate valued and paid on a consistent, non-discriminatory basis as determined by the Brazilian Bankruptcy Court.

32.    The COMI for the Debtors' enterprise is the City of Santo Antônio do Aracanguá, State of São Paulo, Brazil. The Debtors are operationally and functionally centered in the State of São Paulo, largely organized under centralized senior management in the State of São Paulo, and subject to combined cash management and accounting functions, all of which are based in the State of São Paulo. Indeed, with the exception of Aralco Finance (which is discussed further below), the remaining Debtors have the following connections to Brazil:

(a)    all of the Debtors' operations are managed and directed from its head office in the State of São Paulo and are carried out in the State of São Paulo;

(b)    corporate governance for the Debtors is directed from the State of São Paulo, Brazil;

(c)    in-person meetings of the Debtors' boards of directors are typically held in the State of São Paulo, Brazil;

(d)    a majority of the members of the Debtors' boards of directors maintain their offices in the State of São Paulo, Brazil;

(e)    strategic and key operating decisions and key policy decisions for the Debtors are made by staff located in the State of São Paulo, Brazil;

(f)    the Debtors' corporate accounting, accounts payable, insurance procurement, accounts receivable, financial planning, internal auditing, marketing, treasury, real estate, research & development and tax services are provided from the State of São Paulo, Brazil;

(g)     the Debtors' finance, legal, human resources, payroll, billing, freight management, procurement and engineering services are carried out in the State of São Paulo, Brazil;

(h)     the Debtors' cash management functions are maintained and directed from the State of São Paulo, Brazil;

(i)     key information technology and systems used by the Debtors are provided from the State of São Paulo, Brazil;

(j)     management and senior staff of the Debtors regularly attend meetings in the State of São Paulo, Brazil;

(k)     a manager that oversees financial management of the Debtors is based in the State of São Paulo, Brazil;

(l)     capital expenditure decisions affecting the Debtors are managed in the State of São Paulo, Brazil;

(m)     the majority of the Debtors' creditors, both in number and amount, (excepting the Noteholders) are located in Brazil; and

(n)     the Debtors' equity holders are located in Brazil.

33.     Additionally, although Aralco Finance is incorporated in the Luxembourg, both its "nerve center" and "locus of operations" have been in Brazil since before the commencement of the Brazilian Bankruptcy Proceedings and have remained there as of the date hereof.

34.     Moreover, the existence of Aralco Finance's center of main interests in Brazil has been public and therefore ascertainable by creditors and third parties, based upon the following:

(a)     while Aralco Finance holds its registered office in Luxembourg, which the Debtors understand it is required to hold as a technical matter of Luxembourg law, it is only permitted to engage in activities related to the financing of Aralco S.A., its parent located in Brazil;

(b)     Aralco Finance has two directors, both of whom reside in Sao Paolo, Brazil;

(c)     each of the guarantors of the Notes are incorporated in Brazil and all of the members of their boards of directors and executive officers reside in Brazil;

(d)     all or substantially all negotiations regarding the Brazilian Proceeding and the restructuring of the Notes issued by Aralco Finance, including with the Ad Hoc Group, have occurred in Brazil;

(e)     while originals of Aralco Finance's statutory books, records and corporate documents are kept in Luxembourg, copies of all such documents are kept in Brazil; and

(f)     all of the documents submitted in the Brazilian Bankruptcy Proceedings have been issued on behalf of all of the Debtors, including Aralco Finance.

35.     Apart from some minor tax obligations owed to the government of Luxembourg and the lease for its registered office, Aralco Finance does not appear to have obligations owing to Luxembourg creditors, except to the extent that any such Luxembourg creditors happen to be among the beneficial holders of the Notes or other financial indebtedness. Indeed, Aralco Finance has no suppliers and the only service contractor providing it services in Luxembourg is its domicile agent.

36.     Finally, as stated in the Motion, I understand and believe that recognizing the Brazilian Bankruptcy Proceeding as a foreign main proceeding and granting the relief requested therein is consistent with the purposes of chapter 15 of the Bankruptcy Code and public policy of the United States.

37.     Therefore, I believe that the relief requested in the Motion is necessary and appropriate and is in the best interests of the Debtor, its creditors, and other parties in interest.

**B.     The Application**

38.     Shortly after this declaration is filed, I will also file the Application seeking the entry of an order substantially in the form attached to the Application as Exhibit "A" (such form the "Proposed Order") (i) setting the date and time (New York time) (the

"Recognition Hearing Date") for the hearing (the "Recognition Hearing") on the relief sought in

the Petition, (ii) setting the date and time (New York Time) as the deadline by which any

responses or objections to the Petition must be received (the "Objection Deadline"); (iii)

approving the form of notice of the Recognition Hearing Date (the "Recognition Hearing

Notice") that is attached to the Application as Exhibit "B"; (iv) approving the manner of service

of the Recognition Hearing Notice as described in the Application; and (v) granting related

relief.

       39.    I can attest that the Debtors have many creditors and other parties in

interest who need to be notified about Proposed Order, the Recognition Hearing Date, the

Recognition Hearing, and the Objection Deadline. Under the facts and circumstances of the

Debtors chapter 15 cases, I submit that service of the Recognition Hearing Notice in the manner

proposed in the Application will provide the Chapter 15 Notice Parties (as defined in the

Application) due and sufficient notice of the relief requested in the Motion and associated

objection deadline and hearing dates.

       40.    Furthermore, the Recognition Hearing Notice provides several efficient

ways for any party receiving such notice to obtain any copies of pleadings and papers that I may

file in this chapter 15 case. For example, it provides a mailing address, email address, and phone

number that can be used to request and obtain critical documents, including the Motion, the

Proposed Order, the Brazilian Confirmation Order, and the Brazilian Reorganization Plan.

Additionally, service of any pleadings and papers filed in this case, as set forth herein, is an

efficient and effective way to provide notice to such key parties in these chapter 15 cases and the

Brazilian Bankruptcy Proceedings. At the same time, I, as the foreign representative, will not be

over-burdened with the significant costs associated with copying and mailing all the various

documents filed in this case to the entire matrix of putative creditors and other parties that already received adequate notice of the Brazilian Confirmation Order and the Brazilian Reorganization Plan in connection with the Brazilian Bankruptcy Proceedings and have no known connection to the United States.

41.    Therefore, I believe that the relief requested in the Application is necessary and appropriate and is in the best interests of the Court, the Debtors, their creditors, and other parties in interest.

## Statement Pursuant to Section 1515(c) of the Bankruptcy Code

42.    The only foreign proceedings (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to each of the Debtors that are known to me are the Brazilian Bankruptcy Proceedings.

## Pending Bankruptcy Cases Filed by Affiliates of the Debtors

43.    None of the Debtors has a pending petition with the Court for relief under chapter 15, or any other chapter of title 11 of the United States Code.

## Administrators in the Brazilian Bankruptcy Proceedings

44.    In Brazilian judicial reorganization proceedings (*recuperação judicial*) pursuant to Federal Law No. 11.101 of February 9, 2005, the Debtors remain in possession of its assets and attend to their own affairs.  I, Ricardo Villela, was authorized by the Boards of Directors of each of the Debtors to act as foreign representative in these chapter 15 cases in the

United States.  I am unaware of any other persons or bodies authorized to administer foreign

proceedings in respect of the Debtors.[6]

### Parties to Litigation in the United States

45.     As of the date of the filing of this Petition, the Debtors are not aware of

any litigation pending in the United States in which it is a party.

### Entities against Whom Provisional Relief is Sought under Section 1519

46.     Neither the Debtors nor I are currently seeking any provisional relief, but

each of us reserves the right to do so should the need arise.

### Corporate Ownership Statement
### of Aralco S/A Industria E Comercio Pursuant to
### Bankruptcy Rules 1007(a)(4) And 7007.1 and Local Rule 1007-3

47.     In accordance with Bankruptcy Rule 7007.1, I hereby state that no

corporation directly or indirectly owns 10% or more of the Aralco S/A Industria e Comercio's

equity interests.

48.     In addition, pursuant to Local Rule 1007-3, I hereby state that Aralco S/A

Industria e Comercio owns 97,1% of Agrogel – Agropecuaria General Ltda., located at Estrada

da Serrinha, Km 7+800 meters, City of General Salgado, State of Sao Paulo, Brazil; 99,9% of

Aracanguá Sociedade de Participação Ltda., located at Rodovia SPV-061 Km 45+500 meters,

City of Santo Antonio do Aracangua, State of Sao Paulo, Brazil; 72,81% of ordinary stocks and

72,81% of preferential stocks of Alcoazul S.A. – Açúcar e Álcool, located at Rodovia Caram

Rezek, City of Aracatuba, State of Sao Paulo, Brazil; and 100% of Figueira Indústria e Comércio

---

[6]     The judicial administrator, appointed by the court, with a supervisory role but no management powers, is Mr.
Luis Claudio Montoro Mendes, member of Capital Administradora Judicial, headquartered at Rua Silvia, 110,
City of São Paulo, State of São Paulo, Brazil.  Such judicial administrator has not been authorized to
commence foreign proceedings in respect of the Debtors.

S.A., located at Estrada da Pedreira, Km 45+382 meters of Rodovia Roberto Rollemberg, City of

Buritama, State of Sao Paulo, Brazil.

### Corporate Ownership Statement
### of Agral S/A Agricola Aracangua Pursuant to
### Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3

49.    In accordance with Bankruptcy Rule 7007.1, I hereby state that no

corporation directly or indirectly owns 10% or more of the Agral S/A Agricola Aracangua's

equity interests.

50.    In addition, pursuant to Local Rule 1007-3, I hereby state that Agral S/A

Agricola Aracangua does not own any stake in other corporations.

### Corporate Ownership Statement
### of Destilaria Generalco S/A Pursuant to
### Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3

51.    In accordance with Bankruptcy Rule 7007.1, I hereby state that no

corporation directly or indirectly owns 10% or more of the Destilaria Generalco S/A's equity

interests.

52.    In addition, pursuant to Local Rule 1007-3, I hereby state that Destilaria

Generalco S/A does not own any stake in other corporations.

### Corporate Ownership Statement
### of Alcoazul S/A Acucar e Alcool Pursuant to
### Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3

53.    In accordance with Bankruptcy Rule 7007.1, I hereby state that Aralco

S/A Industria e Comercio directly owns 72.81% of ordinary shares and 72.81% of preferential

shares of the Alcoazul S/A Acucar e Alcool's equity interests.

54.    In addition, pursuant to Local Rule 1007-3, I hereby state that Alcoazul

S/A Acucar e Alcool does not own any stake in other corporations.

**Corporate Ownership Statement
of Figueira Industria e Comercio S/A Pursuant to
Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3**

55.    In accordance with Bankruptcy Rule 7007.1, I hereby state that Aralco

S/A Industria e Comercio directly owns 100% of the Figueira Industria e Comercio S/A's equity

interests.

56.    In addition, pursuant to Local Rule 1007-3, I hereby state that Figueira

Industria e Comercio S/A does not own any stake in other corporations.

**Corporate Ownership Statement
of Aralco Finance S/A Pursuant to
Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3**

57.    In accordance with Bankruptcy Rule 7007.1, I hereby state that no

corporation directly or indirectly owns 10% or more of the Aralco Finance S/A's equity interests.

58.    In addition, pursuant to Local Rule 1007-3, I hereby state that Aralco

Finance S/A does not own any stake in other corporations.

**Corporate Ownership Statement
of Aracangua Sociedade de Participacao Ltda. Pursuant to
Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3**

59.    In accordance with Bankruptcy Rule 7007.1, I hereby state that Aralco

S/A Industria e Comercio directly owns 99.9% of the Aracangua Sociedade de Participacao

Ltda.'s equity interests.

60.    In addition, pursuant to Local Rule 1007-3, I hereby state that Aracangua

Sociedade de Participacao Ltda. does not own any stake in other corporations.

**Corporate Ownership Statement
of Agrogel Agropecuaria General Ltda. Pursuant to
<u>Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3</u>**

61.     In accordance with Bankruptcy Rule 7007.1, I hereby state that Aralco

S/A Industria e Comercio directly owns 97.1% of the Agrogel Agropecuaria General Ltda.'s

equity interests.

62.     In addition, pursuant to Local Rule 1007-3, I hereby state that Agrogel

Agropecuaria General Ltda. does not own any stake in other corporations.

**Corporate Ownership Statement
of Agroazul – Agricola Alcoazul Ltda. Pursuant to
<u>Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Rule 1007-3</u>**

63.     In accordance with Bankruptcy Rule 7007.1, I hereby state that Alcoazul

S/A Acucar e Alcool directly owns 99.9% of the Agroazul – Agricola Alcoazul Ltda.'s equity

interests.

64.     In addition, pursuant to Local Rule 1007-3, I hereby state that Agroazul –

Agricola Alcoazul Ltda. does not own any stake in other corporations.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that, based on my

knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated:  February ___ , 2015                          Respectfully submitted.


_____
Ricardo Costa Villela
Foreign Representative of the Debtors

AMERICAS 90431535