WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Thomas MacWright

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
John K. Cunningham
Richard S. Kebrdle (*pro hac vice* pending)

*Attorneys for Ricardo Costa Villela*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )<br>)<br>) Chapter 15<br>**ARALCO S.A. - Indústria e Comércio,** *et.* ) <br>*al.*,[1] ) Case No. 15-10419 (___)<br>)<br>**Debtors in Foreign Proceedings.** )<br>) |

**DECLARATION OF JOEL LUIS THOMAZ BASTOS PURSUANT TO 28 U.S.C. § 1746 SUPPLEMENTING (I) FORMS OF VOLUNTARY PETITION AND (II) THE FOREIGN REPRESENTATIVE'S VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDINGS AND CHAPTER 15 RELIEF**

1. I, Joel Luis Thomaz Bastos, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

2. I submit this declaration in support of the *(a)* the *Foreign Representative's Verified*

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's foreign tax or registration identification number, are: Aralco S.A. - Indústria e Comércio (01-80); Agral S.A. Agrícola Aracanguá (01-65); Destilaria Generalco S.A. (01-73); Alcoazul S.A. - Açúcar e Álcool (01-70); Figueira Indústria e Comércio S.A. (01-25); Aralco Finance S.A.(6520); Aracanguá Sociedade de Participação Ltda. (01-00); Agrogel - Agropecuária General Ltda. (01-82) ; and Agroazul - Agrícola Alcoazul Ltda. (01-24).

Americas 90417694                                1

*Petition for Recognition of Foreign Main Proceedings and Request for Chapter 15 Relief* [ECF No. 3] (the "Petition"),[2] which seeks entry of an order (i) recognizing the judicial reorganization proceedings (the "Brazilian Bankruptcy Proceedings") of the above-captioned debtors (the "Debtors") before the Second Civil Court of the District of Aracatuba, State of São Paulo (the "Brazilian Bankruptcy Court"), pursuant to Federal Law No. 11,101 of February 9, 2005 (the "Brazilian Bankruptcy Law") under the laws of the Federative Republic of Brazil ("Brazil") as foreign main proceedings pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and (ii) granting related relief pursuant to sections 105(a), 1507(a), 1509(b),1517, 1520, 1521 and 1525 of the Bankruptcy Code in support of the financial reorganization of the Debtors under Brazilian law.

## BACKGROUND AND QUALIFICATIONS

3.  I am a partner in the law firm of Advocacia Dias Carneiro, Arystobulo, Flores, Sanchez, Thomaz Bastos ("Dias Carneiro"), a full service law firm with an office in Sao Paulo, Brazil.

4.  Pertinent aspects of my educational background are as follows: In 1992, I obtained a bachelor's degree at the Univerdade Mackenzie, School of Law, Brazil. Since the advent of the Brazilian Bankruptcy Law, I focused my practice on insolvency and restructuring law. I have extensive experience as the lead attorney on large and sophisticated restructuring cases in Brazil and my work has been acknowledged by various prestigious legal directories as PLC (Practical Law Company), Chambers, Legal 500 and Latin Lawyer.

5.  To assist this Court's consideration of the Petition, I submit this declaration to

---

[2] Except as otherwise indicated, capitalized terms used herein carry the meanings ascribed to them in the Petition.

describe for the Court the relevant aspects of the bankruptcy and reorganization process under Brazilian law.

## BRAZILIAN JUDICIAL REORGANIZATION PROCEEDINGS

### a. Brazilian Judicial Reorganization Proceedings

6. Insolvency proceedings in Brazil are governed by the Brazilian Bankruptcy Law, which came into effect on June 9, 2005.[3] The Brazilian Bankruptcy Law focuses on facilitating faster bankruptcy processes and seeks to foster direct collaboration and direct participation of governmental authorities in the company's reorganization. Moreover, the Brazilian Bankruptcy Law focuses on encouraging a company's successful reorganization, rather than its liquidation.

7. The Brazilian Bankruptcy Law provides for bankruptcy liquidation proceedings as well as two forms of reorganization: (1) a court-supervised reorganization proceeding known as *recuperação judicial* ("judicial reorganization"); and (2) an expedited reorganization proceeding known as *recuperação extrajudicial* ("extra-judicial reorganization"). Because the Debtors' Brazilian Bankruptcy Proceedings are court-supervised reorganizations, only the procedures and requirements of this form of reorganization will be discussed herein.

### i. Requirements for Commencing a Judicial Reorganization

8. Judicial reorganization in Brazil is a judicially-supervised arrangement between the debtor and its creditors. Only a debtor is allowed to file for judicial reorganization. Although not specifically provided for in the Brazilian Bankruptcy Law, courts in Brazil generally recognize a concept similar to substantive consolidation whereby the assets and obligations of related companies that have filed a joint reorganization petition are pooled together for the purposes of

---

[3] The previous bankruptcy law, which was in force from June 21, 1945 to June 9, 2005, was Decree-Law No. 7,661/45.

such proceeding. When filing a petition for reorganization, a debtor must include a statement of the causes of its financial distress, its financial statements, a listing of its creditors and claims, and any other pertinent information and documents. The completed petition must then be filed in the appropriate state civil court in the jurisdiction where the debtor's main establishment is located.

9. Once a petition has been filed, the court will review the petition and determine if it is appropriate to admit the debtor into judicial reorganization. In order to obtain relief under the judicial reorganization portion of the Brazilian Bankruptcy Law, the entity must be considered a business company and the entity must be insolvent.

10. If a debtor entity satisfies all the requirements discussed above and additional eligibility requirements, the court will issue a decision commencing the judicial reorganization proceeding. Such decision initiates a 180-day stay of all actions commenced against the debtor, including actions against a jointly liable partner of the debtor.

### ii. The Debtor's Operations during Bankruptcy

11. As a general rule, once a judicial reorganization has commenced, the debtor retains the right to administer its assets and affairs and may continue to run its business. A judicial administrator (*administrador judicial*) is appointed by the court and is responsible for, among other things, overseeing the debtor's management of its day-to-day affairs and managing the claims verification process. The judicial administrator, however, does not interfere with or impose its will upon the debtor's operation. However, the judicial administrator has the role to inform the court when the debtor fails to meet its obligations under the plan or otherwise commits malfeasance. Consequently, the officers and directors of the debtor are duly authorized to act on the debtor's behalf in the judicial reorganization, similar to the authorities of officers, directors or authorized

representatives of a debtor-in-possession under the Bankruptcy Code.

12. The Brazilian Bankruptcy Law also allows the formation of a committee of creditors which may be composed of: (1) a representative of the labor creditors; (2) a representative of the secured creditors and/or creditors entitled to special privilege; (3) a representative of the unsecured creditors and those creditors entitled to general privilege; and (4) a representative of the small businesses company creditors. The committee of creditors under the Brazilian Bankruptcy Law serves as an overseeing body that ensures the interests of the creditors are represented throughout the proceedings. The main responsibilities of the committee of creditors are to inspect and monitor compliance with the Brazilian Bankruptcy Law, to inform the judge of any violation of legal provisions and to issue opinions on interested parties' complaints. The committee has a duty to obtain information about the debtor and inform all creditors regarding such information.

13. Even though the specific make-up of the committee differs from the committee of creditors required under section 1102 of the Bankruptcy Code, the committee of creditors under the Brazilian Bankruptcy Law serves as an overseeing body that ensures the interests of the creditors are represented throughout the proceedings, much in the same way that I understand the committee of creditors in a chapter 11 proceeding does.

### iii. Plan of Reorganization and Confirmation Process

14. Once a judicial reorganization has commenced, the reorganization proceeding may be converted into a liquidation proceeding at any time. As described further below, the debtor will be declared bankrupt if any of the following events occur: (1) the debtor fails to submit the reorganization plan within the 60-day time period from the decision commencing the

reorganization proceeding; (2) the general meeting of creditors does not approve the reorganization plan by the required majorities; or (3) the debtor fails to fulfill the terms of the approved judicial reorganization plan. After the debtor has been declared bankrupt, officers and directors of the debtor company are no longer allowed to manage its affairs and the assets of the debtor are collected and sold by the judicial administrator.

15. After filing a petition for relief under the Brazilian Bankruptcy Law and following a court decision, the debtor must submit a judicial reorganization plan within 60 days of the decision commencing the reorganization proceeding. This 60-day time period is not extendable. As previously mentioned, if the debtor does not comply with this obligation, the debtor is declared bankrupt. Save a few exceptions, the debtor's judicial reorganization plan applies to all claims existing on the date of the petition.

16. During the 30 days following the publication of a notice to the creditors informing them of the presentation of the debtor's plan, any creditor can object to the plan before the court. Should any creditor object to the judicial reorganization plan proposed by the debtor, the court shall call a general meeting of creditors (the "General Meeting") to vote on the reorganization plan. In the event that no objections to the plan are raised by any creditor, the court will confirm the plan.

17. At the General Meeting, the debtor's creditors deliberate on the acceptance, refusal, or modification of the judicial reorganization plan. Modification to the plan is only possible with the consent of the debtor. The deliberations to be held in the General Meeting require approval of all four classes of claims present at such meeting. Thus, only those creditors present at the General Meeting or who have had delivered a valid proxy to an attendee at the meeting may vote. If the

plan is approved at the General Meeting, the court shall grant the judicial reorganization of the debtor. If the plan is not approved, the court shall convert the reorganization proceeding into a liquidation proceeding.

18. A plan of reorganization must contain: (1) a thorough description of the measures to be taken to successfully reorganize the company; (2) a demonstration of the economic feasibility of the plan of reorganization; and (3) a financial expert's assessment of the debtor's assets. In addition, the plan of reorganization must provide for the payment of the affected claims.

19. For purposes of voting on a debtor's plan of reorganization, creditors are divided into four classes of claims, as follows: (1) holders of labor-related claims ("Class I"); (2) holders of secured claims ("Class II"); (3) holders of unsecured claims, claims entitled to general and special privilege and subordinated claims ("Class III"); and (4) holders of claims classified as "small businesses companies" ("Class IV"). Equity holders' acceptance of the plan is not required for its approval. Claims not subject to the reorganization proceeding (such as those secured by chattel mortgages and those deriving from leasing transactions) are not affected by the plan and do not entitle their holders to vote. In addition, unimpaired claims are not entitled to vote on the plan of reorganization. Each impaired creditor holds the right to vote on the plan unless such creditor is a partner or shareholder of the debtor company, or of a party related to the debtor company. Creditors who are absent from the meeting or who abstain from voting, even if impaired under the plan, are not counted for the purposes of approval or rejection of the plan.

20. Approval of a plan may be obtained in one of two ways: (1) through a "regular creditor majorities" procedure or (2) through a "cram down" procedure. Approval of a plan through the regular creditor majorities procedure requires that the plan is approved in each class of

claims. Specifically, in Classes I and IV, the requirement for approval of the plan is a simple majority (more than 50%) of creditors, in number, present at the meeting of creditors, regardless of the value of the claims held. In Classes II and III, however, the plan must be approved by (i) more than 50% of the creditors present at the creditors' meeting, in number, in each class; and (ii) creditors that hold more than fifty percent (50%) in amount of the allowed claims present at the creditors' meeting, in each class.

21. If the required majorities are not met in a class of claims, the plan may still be approved via a cram down of the rejecting class. Approval of a plan through the cram down procedure requires the court to approve the plan if the following cumulative requisites are met: (1) holders of a simple majority (more than 50%) of the total allowed claims present at the creditors meeting vote for approval of the plan; (2) the required majorities are met in two of the four classes of claims (if there are four classes of claims), or in one class of claims (if there are only two classes of claims); and (3) (a) if the required majorities are not met in Classes I and/or IV, more than one third (1/3) of the creditors, in number, present at the meeting of creditors, regardless of the value of the claims held, must have voted in favor of the plan, or (b) if the required majorities are not met in Class II and/or in Class III, more than one third (1/3) of the creditors present at the creditors' meeting, in number, in such classes, must have voted in favor of the plan and, cumulatively, creditors that hold more than one third (1/3) in amount of the allowed claims present at the creditors' meeting, in such classes, must have voted in favor of the plan. In addition, cram down confirmation of the plan is only applicable if the plan does not entail different treatment among the creditors of the class that rejected it.

22. The Brazilian Bankruptcy Law provides that the plan of reorganization confirmed

by the court represents a novation of the pre-filing claims and binds the debtor and all the impaired creditors. If the debtor breaches any obligation assumed under the plan of reorganization which is due two (2) years from the date such plan is confirmed by court, the Brazilian Bankruptcy Law provides that the debtor must be declared bankrupt by the court. If the reorganization plan is confirmed, the debtor continues under judicial reorganization proceedings until all obligations established in the plan and due within two (2) years from court confirmation have been satisfied. After the debtor emerges from reorganization, if the debtor fails to perform any obligation in the judicial reorganization plan, any creditor may file a motion for specific performance or the debtor's liquidation.

23.     If a person or entity acquires a branch or an isolated production unit from the debtor under the plan of reorganization, and provided that such sale is executed under the Brazilian Bankruptcy Law, such person or entity will not succeed to the debtor's liabilities, regardless of such liabilities' nature (e.g., labor, tax, product liability, etc.).

>   b. **Brazilian Bankruptcy Law Relevant to the Factors for Granting Additional Relief Set Forth in Section 1507 of the Bankruptcy Code**
>
>     i. **Provisions Providing for the Just Treatment of All Holders of Claims against or Interests in the Debtor's Property**

24.     As outlined above, the procedural safeguards for creditors of a debtor under the Brazilian Bankruptcy Law are robust, providing a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among the estate's creditors in one proceeding. The regular creditor majorities procedure requires significant consensus among the creditors of each class. A majority in both number and amount of the claims voting for each secured and unsecured class must vote to approve the plan; in the event that there are up to two

dissenting classes, the plan may be crammed down on such classes only so long as the other two classes accept the plan, at least one third (1/3) of the members of the dissenting classes (pursuant to the quorum requirements outlined above) accept the plan, and the plan does not treat differently the members within a dissenting class.

25. The Brazilian Bankruptcy Law provides additional protection to creditors through the appointment of a committee of creditors and a judicial administrator, each of which carries out an oversight role in the proceeding that ensures a fair and orderly resolution of the claims against the debtor's estate. In addition, creditors also have the right to object to a proposed plan within 30 days after the debtor has proposed it. Moreover, the creditors may manifest opposition to the plan, and propose amendments to it, during the creditors' meeting until final approval by the creditors. Creditors may also seek reconsideration of a plan. Within the five days after the court confirms a plan, creditors may present to the court a motion for clarification; and, within ten days of confirmation, the creditors may file an interlocutory appeal to be considered by the Court of Appeals of the State of São Paulo (the "Court of Appeals"). Moreover, these interlocutory appeals may be filed by creditors either after the decision on confirmation of the Plan or after the decision regarding the motion for clarification. Appeals filed by the same creditor against both decisions will be considered by the Court on a case-by-case basis. Finally, after the Court of Appeals issues its decision, the creditors have 15 days to file a special appeal to the Brazilian Superior Court of Justice. Creditors are given proper notice of every court decision, and the deadlines for filing appeals count from the date on which creditors are notified, by means of publication in the Official Gazette, of each decision.

### ii. Protection of Claim Holders in the United States against Prejudice and Inconvenience in Processing Claims

26.     Under the Brazilian Bankruptcy Law, creditors are given adequate notice of timing and procedures for filing claims and such procedures do not impose any additional burdens for foreign creditors to file a claim.  First, upon accepting the debtor into judicial reorganization, the court will order the publication of notice of the proceedings and the list of creditors presented by the debtor.  Creditors have 15 days from the date of publication of the decision in the Official Gazette to present proofs of their claims to the judicial administrator.  In the event that a creditor fails to timely submit the proof of its claim, such proof would still be accepted subject to additional fees and forfeiture of its rights to payment for any dividends already paid on account of timely filed claims and forfeiture of its right to vote in the General Meeting.  The judicial administrator prepares a second list of creditors, based on the information provided by the debtor and contained in the proofs of claims, which is also published.  Within 10 days from the publication of such list, the debtor, the shareholders of the debtor, the creditors, the committee of creditors and the Public Attorney's Office may present their objections to such list.  The court will rule on the objections and order the consolidation of the final list of creditors and claims.

27.     Foreign creditors have the same status as local creditors, which means that a foreign creditor is subject to the proceeding on the same terms as described herein and will have the same rights as a creditor in Brazil.  All foreign creditors are entitled to be on the list of the judicial administrator and receive the benefits of the judicial administrator's oversight and information dissemination under Article 22 of the Brazilian Bankruptcy Law.  In addition, the plan of reorganization may not convert claims in a foreign currency to Brazilian Reais without the specific consent of each affected creditor.  As such, no significant burdens are placed upon U.S. creditors

that are inconsistent with those placed upon domestic creditors.

          **iii.**    **Prevention of Preferential or Fraudulent Dispositions of the Debtor's Property**

28. Although the Brazilian Bankruptcy Law does not govern avoidance actions in judicial reorganization proceedings, creditors are generally permitted to bring actions to avoid transfers made by the debtor under the Brazilian Civil Code, which provides that the following actions be considered fraud against creditors: (i) a gratuitous transfer of assets that leads to or occurs during the debtor's insolvency; or (ii) any onerous transactions entered into by an insolvent debtor and a third party for fraudulent purposes, if causing damage to the creditors.  In each of the above cases, the damaged creditors are entitled to file a lawsuit in a civil court to have the transaction declared void within four years of the transaction.  These lawsuits will generally not be enjoined as a result of the automatic stay applicable in a defendant's or debtor's judicial reorganization proceeding.

29. If a debtor has been declared bankrupt and a liquidation proceeding has been commenced, any creditor, the Brazilian public attorney's office or the judicial administrator appointed by the court may bring actions to avoid transfers made to third parties with the intent to harm creditors or damage the debtor's estate.  In this case, the court may also declare such transfers void *sua sponte* unless intent to defraud is a disputed question of fact, in which case an action must be commenced by one of the parties above.

30. Moreover, some transfers are subject to avoidance within a bankruptcy liquidation proceeding as a matter of law if they were made during the legal term, a period set by the judge and beginning not more than 90 days before the petition or the date of the first protest by a creditor on account of the debtor's default, and ending on the petition date, during which such transfers by

the debtor are subject to scrutiny. Such transfers include payments of debts not yet due, payments of debts that were due but were enforceable in any way not provided for in the agreement memorializing the debt, and the creation of liens or any other *in rem* property interest in connection with a previously incurred debt.

                iv.    **Distribution of Proceeds of the Debtor's Property is Substantially in Accordance with the Bankruptcy Code**

      31.    I understand that in substance the distribution scheme within a bankruptcy liquidation proceeding prescribed in the Brazilian Bankruptcy Law is substantially in accordance with that under the Bankruptcy Code, as it grants priority to certain administrative claims and, importantly, grants secured claims priority over unsecured claims. Under the Brazilian Bankruptcy Law, administrative claims are given super-priority over other claims. Such administrative claims include: (a) fees of the judicial administrator and his or her assistants; (b) labor-related claims or claims related to occupational accidents arising after the petition; (c) any funds provided to the estate by the creditors postpetition; (d) the costs of the bankruptcy proceedings and expenses related to the disbursement of proceeds of the estate; (e) court costs for actions brought against the estate in which the estate was defeated; (f) other obligations arising from valid juristic acts performed during the judicial reorganization and taxes arising after the petition; and (g) labor-related claims of a strictly salary nature, as opposed to hourly wages, arising during the three months prior to the petition date, limited to an amount equal to five monthly minimum wages per salaried employee.

      32.    Following the payment of the above-referenced administrative claims, the various classes of claims are paid, within a bankruptcy liquidation proceeding, in the following order. First, labor-related claims up to 150 monthly minimum wages per creditor and all occupational

claims. Second, secured claims up to the value of the assets encumbered in connection with such claims. Third, tax claims exclusive of tax fines. Fourth, certain claims entitled to "special" privileges under applicable non-bankruptcy law. Fifth, certain claims entitled to "general" privileges under applicable non-bankruptcy law. Sixth, unsecured claims. Seventh, penalties and fines in connection with criminal or administrative law breaches, including tax fines. Eighth, claims subordinated by law or contract and those claims held by directors and shareholders not employed by the debtor.

33.     In a judicial reorganization, the claims of affected creditors are paid according to the plan of reorganization. However, the plan of reorganization (i) may not provide a period longer than one year for the payment of labor-related claims (the payment of labor-related claims of a strictly salary nature, up to the limit of five monthly minimum wages per worker, must be paid within 30 days); and (ii) may not provide for the suppression or the replacement of any security interest, when the asset covered by such security interest is disposed of, without the express approval of the relevant secured creditor.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on this February 25, 2015 in São Paulo, State of São Paulo, Brazil.

_____
Joel Luis Thomaz Bastos
Dias Carneiro, Arystóbulo, Flores,
Sanches e Thomaz Bastos Advogados
Avenida Paulista, 1079
São Paulo, SP
01311-200 - Brasil